IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANIBAL SOLER,

    Petitioner

        CIVIL NO. 1:10-CV-2554

v.        Hon. John E. Jones III

WARDEN RICARDO MARTINEZ,

    Respondent

## **MEMORANDUM**

January 26, 2011

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Anibal Soler ("Petitioner" or "Soler"), an inmate presently confined at the United States Penitentiary at Allenwood ("USP Allenwood") in White Deer, Pennsylvania, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241. (Doc. 1.) He also has filed a Motion requesting leave to proceed *in forma pauperis*. (Doc. 2.) Petitioner's Motion will be granted for the sole purpose of filing the Petition, and, for the reasons set forth below, the Petition will be dismissed for lack of jurisdiction.

**I.    FACTUAL BACKGROUND**

In his Petition, filed on December 16, 2010, Soler states that he is challenging

his conviction in the United States District Court for the District of Massachusetts and sentence of life imprisonment plus sixty (60) years. (Doc. 1 at 2 (citing *USA v. Soler*, D. Mass. Docket No. 3:99-CR-30030.) Soler states that he appealed his conviction to the United States Court of Appeals for the First Circuit. Although Soler does not specify the outcome of his appeal, a search of Westlaw reveals that, on January 4, 2002, the United States Court of Appeals for the First Circuit affirmed in part and reversed in part his convictions. *USA v. Soler*, 275 F.3d 146 (1st Cir. 2002). In its opinion, the First Circuit summarized the relevant background as to Soler's indictment as follows:

> On the morning of July 21, 1999, five men-Thomas Dudek, Christopher Stevenson, Edward Thompson, Matthew Lawrence, and Granger Fulton-gathered at Stevenson's apartment in Sunderland, Massachusetts. The men drank heavily, and Lawrence and Fulton eventually passed out. Despite having consumed between ten and twenty beers apiece, the other three drove to Holyoke in search of cocaine. Dudek, apparently the most drug-savvy of the three, directed Thompson to drive to 67 Newton St. Thompson remained in the car while his confreres climbed an exterior staircase at the back of the building.
>
> Dudek previously had purchased cocaine on the second floor, but this time he and Stevenson ascended to the third-floor landing where a makeshift door, constructed of plywood and chicken wire, blocked further access. Defendant-appellant Anibal Soler met them at that point. When asked what they wanted, Stevenson replied, "$200 worth." The appellant retreated inside and emerged with twenty plastic bags labeled "Me Salve." He handed them to Dudek in exchange for cash.
>
> As matters turned out, the bags contained heroin, not cocaine. Dudek apparently recognized that fact, but said nothing to the others. Stevenson

2

began to snort some of the heroin inside the car. The men drove to Thompson's apartment in Chicopee, where all three proceeded to snort heroin until they collapsed.

Thompson's girlfriend appeared on the scene hours later and tried to revive him. Failing in this effort, she called for help. Dudek awoke before the paramedics arrived, but his two friends remained comatose. The paramedics rushed all three men to the hospital and, soon thereafter, Thompson was pronounced dead.

The authorities immediately undertook an investigation and enlisted Dudek's cooperation (Stevenson did not awake from his coma until seven days later). Upon learning the source of the heroin, they decided to dispatch an undercover state trooper, Juan Colon, to 67 Newton St. On the following day (July 22), Colon, posing as a customer, climbed the exterior stairs to the third-floor landing. When he called into the apartment, a pregnant female emerged and asked what he wanted. Colon responded, "two bags." The woman left the doorway momentarily (as the appellant had done when Dudek appeared) and returned with two bags of heroin, one stamped "e Salve" (an obvious error in which the "M" in "Me Salve" presumably missed the bag's surface during the stamping process) and the other "Blunt." Colon handed her a $20 bill and departed.

Later that day, Colon revisited the third-floor landing. This time, the appellant responded and sold him two bags of heroin, both labeled "Blunt." Once again, Colon paid for the drugs with a $20 bill. The authorities then executed a search warrant for the third-floor apartment. Both the appellant and the pregnant woman were there when the police arrived-and both attempted to flee.

A search of the premises yielded, among other things, thirty bags of heroin (all labeled "Blunt") and over $5,000 in United States currency. Stashed with the heroin was $1,010 in cash, including the two $20 bills that Colon had used to pay for his purchases from the pregnant woman and the appellant, respectively.

In due course, a federal grand jury handed up a five-count indictment. The indictment charged the appellant with distribution of heroin, death resulting,

> on July 21, 1999, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C) (count 1); possession of heroin with intent to distribute on July 22, 1999, in violation of 21 U.S.C. § 841(a)(1) (count 3); possession of heroin with intent to distribute within 1,000 feet of a school on each of those two dates, in violation of 21 U.S.C. § 860(a) (counts 2 and 4); and conspiracy to possess and distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) & 846 (count 5).[footnote omitted] Following a ten-day trial, the jury found the appellant guilty on all five counts. On December 5, 2000, the district court imposed concurrent sentences of life imprisonment on counts 1, 2, and 5, thirty years on count 3, and sixty years on count 4. The court sentences were enhanced because the government, pursuant to 21 U.S.C. § 851, appropriately brought to the court's attention the appellant's previous convictions for unrelated drug-trafficking felonies. This timely appeal ensued.

*Soler*, 275 F.3d at 149-150. The Court affirmed Soler's convictions on Counts 1, 3, and 5, but reversed his convictions on Counts 2 and 4 and vacated the sentenced imposed on those counts. *Id.* at 155.

A search on the Public Access to Court Electronic Records ("PACER") System reveals that, by Order dated May 16, 2002, the United States Supreme Court denied Soler's Petition for Writ of Certiorari.[1] (*USA v. Soler*, 1st Cir. Court of Appeals No. 01-1179.) The First Circuit docket also shows that, on December 20, 2010, Soler filed a motion with the First Circuit Court of Appeals to recall its Mandate issued on February 4, 2002. (*Id.*) By Order dated December 22, 2010, Soler's Motion was denied.[2] (*Id.*)

---

[1] *See* United States Court of Appeals for the First Circuit, General Docket, available at http://www.pacer.gov.

[2] The First Circuit's December 22, 2010 Order was not available for viewing, and therefore,
(continued...)

4

A review of PACER also reveals that Soler never has filed a motion to amend, correct, or vacate his sentence with the sentencing court under the provisions of 28 U.S.C. § 2255.[3] (*USA v. Soler*, D. Mass. Docket No. 3:99-CR-30030-MAP-1.)

On December 16, 2010, almost eight (8) years after his direct appeal was disposed of by the First Circuit, Petitioner filed the instant Petition. He does not articulate specific grounds in his form petition. (*See* Doc. 1 at 1-7.) However, Soler attaches a Memorandum of Law to his Petition in which he begins by acknowledging that a petition for writ of habeas corpus filed by a federal prisoner shall not be entertained unless it appears that the remedy provided through a motion filed under the provisions of 28 U.S.C. § 2255 is inadequate or ineffective to test the legality of his detention. (*See id.* at 8 (citing 28 U.S.C. § 2255).)

In his Memorandum of Law, Soler admits that he never filed a § 2255 motion, but asserts that the remedy is inadequate or ineffective to test the legality of his detention. (*See id.* at 9.) He then argues that he can show "cause" for not raising his claims previously because his case presents an "issue of novelty" in that he is a 75 year old, non-English speaking, Puerto Rican who has not had an education beyond the first grade.

---

[2](...continued)
the basis for denial of Petitioner's Motion is unknown to this Court.

[3]*See* United States District Court for the District of Massachusetts, CM/ECF System, available at http://www.pacer.gov.

(*See id.* at 9, 10.) He alleges that his trial counsel was ineffective in several respects in handling his case, and argues that he "will be prejudiced if no federal judge ever reviews the unconstitutionality of his incarceration and his convincing claim of actual innocence." (*See id.* at 10.) Soler submits that the prejudice is clear in that his lack of education and inability to speak English have resulted in his being sentenced to die in prison without a single federal judge having reviewed his "unconstitutional claims." (*See id.* at 11.)

Soler then provides background as to his criminal proceedings (*see id.* at 12-18) before offering additional argument that eyewitness testimony that was offered at trial to identify him was unreliable and that there was insufficient evidence to convict him of conspiracy to possess and distribute heroin. (*See id.* at 18-22.) He asks that this Court vacate the judgment imposed in his case. (*See id.* at 23.)

**II.   DISCUSSION**

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 ("Preliminary Review; Serving the Petition and Order") of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions through Rule 1(b)). *See, e.g., Patton v. Fenton,* 491 F.Supp. 156, 158-59 (M.D. Pa. 1979).

Rule 4 provides, in pertinent part, "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge

6

must dismiss the petition and direct the clerk to notify the petitioner." A petition may be dismissed without review of an answer "when the petition is frivolous, or obviously lacking in merit, or where . . . the necessary facts can be determined from the petition itself." *Allen v. Perini,* 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied,* 400 U.S. 906 (1970). The *Allen* court also stated that "the District Court has a duty to screen out a habeas corpus petition which should be dismissed for lack of merit on its face." *Id.*

The proper method for an individual convicted in federal court to challenge the validity of his federal conviction and sentence is first to file a notice of appeal to the appropriate court of appeals. If an individual wishes to further challenge his federal conviction after the court of appeals has disposed of his appeal and his judgment of sentence has become final, the proper method to do so is to file a motion with the sentencing court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002); *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997). Motions filed pursuant to § 2255 are the exclusive means by which a federal prisoner can challenge a conviction or sentence that allegedly is in violation of the Constitution or federal laws, or that is otherwise subject to collateral attack. *Davis v. United States*, 417 U.S. 333, 343 (1974); *United States ex rel. Leguillou v. Davis*, 212 F.2d 681, 693 (3d Cir. 1954). Habeas relief under 28 U.S.C. § 2241 only is available if a § 2255 motion is "inadequate or ineffective to test the

7

legality of his detention." *See* 28 U.S.C. § 2255(e); *see also Okereke*, 307 F.3d at 120; *In re Dorsainvil*, 119 F.3d at 251.

"It is the inefficacy of the remedy, not the personal inability to use it, that is determinative." *Cradle v. United States*, 290 F.3d 536, 538 (3d Cir. 2002). "Section 2255 is not inadequate or ineffective merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255." *Id.* at 539. Rather, the "safety valve" provided under § 2255 is extremely narrow and has only been applied in unusual situations, such as those in which a prisoner has had no prior opportunity to challenge his conviction for conduct later deemed to be noncriminal by a change in law. *Okereke*, 307 F.3d at 120 (citing *In re Dorsainvil*, 119 F.3d at 251). If a defendant improperly challenges his federal conviction or sentence under § 2241, the petition must be dismissed for lack of jurisdiction. *Application of Galante*, 437 F.2d 1164, 1165 (3d Cir. 1971); *Hill v. Williamson*, 223 Fed. Appx. 179, 180 (3d Cir. 2007).

Applying the foregoing principles here, we conclude that Soler has not demonstrated that the filing of a § 2255 motion is an inadequate or ineffective means to raise the instant claims. He asserts that his case "presents an issue of novelty" because of his advanced age, lack of education, and inability to speak English. (*See* Doc. 1 at 10.) Despite the circumstances he identifies, Soler successfully pursued a direct appeal from

his conviction and then filed a petition for writ of certiorari with the United States Supreme Court. He does not explain how these circumstances prevented him from asserting the claims he now presents of ineffective assistance of counsel, actual innocence, and unreliable and/or insufficient evidence through a timely filed § 2255 motion, particularly where the basis for these claims would have been known to him from the time of his trial nearly eleven (11) years ago.

Moreover, Soler does not allege that there has been some intervening change in the law that would allow him to now pursue the instant claims in a § 2241 petition. Indeed, as to Soler's central claim that he was misidentified and is actually innocent of the crimes for which he was convicted, the Third Circuit Court of Appeals previously has determined that, where a petitioner had a reasonable opportunity to raise his claim of actual innocence in a § 2255 motion before the sentencing court, and the claim is not based on an intervening change in the law that would render the conduct for which he was convicted noncriminal, a § 2255 motion would not be an inadequate or ineffective means to challenge his conviction. *See Russell v. Pugh*, 143 Fed. Appx. 408, 410 (3d Cir. 2005). The mere fact that Soler chose not to pursue a § 2255 motion with the United States District Court for the District of Massachusetts, and the fact that the deadline to file such a motion has long expired, are insufficient reasons to allow him to pursue habeas relief in this Court at this time. *See Cradle*, 290 F.3d at 539.

## III. CONCLUSION

For the foregoing reasons, we conclude that we lack jurisdiction to entertain the instant Petition and therefore, the Petition will be dismissed. An appropriate Order will enter.